<hr />

# THOMAS J. FLACK *vs.* MARIANNE GARLAND, EXC'R of NATHANIEL GARLAND.

Where a debtor sets up an agreement with his creditor to compound his claim by paying a certain sum in cash or notes at a specified time, as a bar

to the creditor's claim, he must show compliance with his part of the agreement either by paying, or offering to pay, in conformity with its terms, before he can rely upon the composition.

APPEAL from the Equity Side of the Circuit Court for Baltimore city.

The bill in this case was filed by the appellant, for an injunction to restrain execution upon a judgment recovered against him in 1843, by the appellee's testator and his then partner, Elwell, whom the testator survived. The allegations of the bill are fully stated in the opinion of this court. The answer of the executrix denied the facts on which the equity of the bill rested.

The testimony chiefly relied on to support the complainant's case is that of the two Masons, composing the firm of Mason & Son. The son testifies that their firm was a creditor of Flack at the time of his failure, which they subsequently settled by receiving fifty cents in the dollar; that Garland came to their store several times and said he was a creditor of Flack, that they had better take fifty cents in the dollar, as they never could get any more, and it was partly through Garland's influence that witness took the fifty cents in the dollar after a conversation with his father; that their settlement with Flack took place July 8th, 1846, and the conversations with Garland in the latter part of 1845 or the beginning of 1846, in front of their store on the `pavement, or in the store.

Mason, the father, testifies that he had repeated conversations with Garland about their respective claims against Flack; that Garland told him he had agreed to take fifty cents in the dollar; that Flack had nothing they could get hold of, and he had a conversation with Mr. Hinkley, his lawyer, and they agreed it was the best that could be done and advised witness to go and see Hinkley, which he did; that at the time of the last conversation with Garland witness had not concluded what to do, but he called and saw Hinkley, and afterwards saw his son, and they agreed to take the fifty cents, not seeing any possibility of getting any more; that Garland and he were holding out until the last conversation took place, in which Garland said that he understood that many of the creditors

had agreed to take fifty cents and some less. In answer to additional interrogatories this witness states, "at the time I saw Garland I found he had concluded to take fifty cents. He having held out the longest I concluded to do the same. I knew Garland many years and had great confidence in his judgment, and as he had concluded to do it I concluded to do the same. I did not tell Mr. Garland I had concluded to do it. This was the last conversation I had with Garland." In reply to a cross-interrogatory, he also stated that he was influenced in some degree by Garland in taking the fifty cents, and should have delayed longer unless Garland had concluded to take it.

On the part of the defendant a witness proved that he was present at a conversation between Garland and Flack, early in July 1846, in relation to the former's claim against the latter, in which Flack stated he was about to settle with Mason, and that Mason had informed him that Garland wanted to settle his claim at fifty cents in the dollar. "Garland replied it was false; he had told Mason no such thing, and desired Flack to go then and bring Mason into his presence and let him say so to his face."

The court below, (KREBS, J.,) dissolved the injunction upon final hearing, and from the order of dissolution the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*John Stewart* and *Charles F. Mayer* for the appellant.

The doctrine on which this bill is filed is eminently one of good faith. It is that where one creditor has persuaded or induced another to accept a compromise, that he shall not himself afterwards reject his own proposal and demand more than what he has induced others to accept. The testimony fully establishes the allegations of the bill implicating Garland as a party to the composition, and now to allow him or his executrix against the terms of the composition to enforce the judgment for more than one-half the demand, would be a fraud

upon Flack and upon Flack's creditors: To bind the appellant to the composition, it is sufficient to show that otherwise a fraud would be operated upon the Masons, who, by Garland's avowed accessions to the composition, were led to accept it and relinquish one-half of their demand. In support of these positions we rely upon the following cases: 3 *Eng. C. L. Rep.*, 411, *Wood vs. Roberts.* 22 *Do.*, 89, *Good vs. Cheesman.* 2 *Term Rep.*, 763, *Cockshott vs. Bennett.* 3 *Do.*, 551, *Jackson vs. Duchaire.* 4 *Do.*, 166, *Jackson vs. Lomas.* 11 *Mees. & Wels.*, 492, *Horton vs. Riley.* 1 *Bos. & Pull.*, 286, *Stock vs. Mawson.* 3 *Anstruther*, 910, *Fawcett vs. Gee.* 5 *Bing.*, 432, *Knight vs. Hunt.* 7 *Gill*, 379, *Gardner vs. Lewis.* 13 *Ves.*, 586, *Jackman vs. Mitchell.* 15 *Do.*, 52, *Sadler vs. Jackson.* 12 *Pet.*, 178, *Clarke vs. White.* 2 *Camp.*, 383, *Bradley vs. Gregory.* 3 *Do.*, 174, *Boothby, et al., vs. Sowden.* 1 *Peere Wms.*, 751, *Pollen vs. Huband. Foster on Composition*, 1 *Lib. Law & Eq.*, 1. 16 *Ves.*, 372, *Mackenzie vs. Mackenzie.* 19 *Law Lib.*, 114. *Story's Eq.*, sec. 191. *Prac. in Chan.*, 310. 1 *Coxe*, 287. 8 *B. Monroe*, 599, *Cutter & Co., vs. Reynolds.*

*John H. B. Latrobe* for the appellee: Measured by the evidence the case put by the bill dwindles down to that which is made by the testimony of the two Masons, and rests upon the only two allegations which the appellant has attempted to sustain by proof:—1st, that Garland agreed to compound the judgment, and 2nd, that his representing to the Masons that he had done so, so far influenced them in following his supposed example as to bring this case within the decisions which make such conduct on the part of a creditor a bar to the recovery of his claim in full.

1st. Now as to the first of these points, it is clear that Garland's agreement *by itself* did not bind him to receive less than the full amount of his claim. The leading case of *Cumber vs. Wane*, in *Smith's Lead. Cases*, 146, in 19 *Law Lib.*, 111, and the cases there cited, settle this. Upon this point argument is unnecessary. There was no consideration to uphold an agreement, either to take a less sum or to exchange the superior

security of a judgment for a claim on open account or promissory note.

2nd. The only considerations to support such an agreement is to be looked for in what took place between Garland and the Masons. Assuming it to be true, for the argument, that Garland told Mason he had agreed to compound, was this, even if followed by Masons doing the same in his reliance on Garland's judgment, such an agreement between Garland and the Masons as furnished the consideration that supported the agreement between Flack and Garland? None of the cases have gone this length. The most prominent are given in the notes in *Smith's Lead. Cases,* to *Cumber vs. Wane.* In *Wood vs. Roberts,* 3 *Eng. C. L. Rep.,* 411, there was an express agreement between *two creditors,* amounting to "if *you* will then *I* will." In *Steinman vs. Magnus,* 11 *East,* 390, there was a regular agreement in writing between the debtor and his creditor. In *Good vs. Cheesman,* 22 *Eng. C. L. Rep.,* 89, there was also a regular agreement in writing to grant a release on terms. So also in *Norman vs. Thompson,* 4 *Wels., Hurls. & Gordon,* 755. In the cases cited on the other side from 13 *and* 15 *Ves.,* 2 *and* 3 *Camp.,* and 12 *Pet.,* there were in all of them special agreements to which the creditors were parties, and whereby, binding themselves to each other, they furnished the consideration which otherwise, under the authority of *Cumber vs. Wane,* would have been wanting. Putting the broadest construction upon the testimony of the Masons it amounts to no more than this, that Garland told them what he had proposed to do, leaving them to follow his example or not as they pleased. It is idle to say there was any agreement between Garland and the Masons, such as existed in the cases referred to where the parties either made a special contract or signed a release of the debtor, because, as the elder Mason testifies, he did not even tell Garland in their last conversation on the subject what he had concluded to do.

But even if we are wrong here and there was such an agreement between Garland and the Masons as furnished a consideration for the agreement between *Flack and Garland,* and assuming such an agreement, still, under the circum-

stances, the appellant could not avail of it because of the want of a tender of performance on his part. If any agreement was made it was in July 1846. If there was any agreement it was to pay cash or give four months' notes. The *scire facias* did not issue till January 1850. In the interval there was no tender of either money or notes, and this alone is fatal to the appellant. 2 *Maule & Selw.*, 119, *Cranley vs. Hillary.* 12 *Pet.*, 191, *Clarke vs. White.* It cannot be said that this is a case where tender was unnecessary because it was known it would be refused; because the bill dwells on the friendliness of the relations of the appellant and Garland in his lifetime, and he survived the alleged composition quite long enough to have received either the notes or the money. In truth nothing was said about a tender until the bill for injunction was filed.

But we say the Masons are in error in their recollections of what took place with Garland, and have magnified ordinary conversations about a common debtor into an agreement to compound. And again we say that the appellant is here asking specific performance of an agreement, the consideration of which was a supposed agreement between him and Garland, and being in equity should come with clean hands if he is to find relief here. In other words, his right to have the injunction perpetuated must rest upon the fact that the Masons settled with him under an agreement with Garland that he would do the same, or having understood from Garland that he would do so, and yet Flack having ascertained from Garland that he would not compound, completed the composition with the Masons without informing them of the fact. If this was so, then his silence was a fraud upon the Masons, and he can have no standing here. Or if he informed the Masons of Garland's refusal and they settled notwithstanding, then such settlement ceases to afford a consideration for the agreement, which it is the object of the present bill to set up, admitting it in every respect to be otherwise satisfactorily made out. The appellant is in a dilemma and may select the horn he prefers. We contend therefore:

1st. That as between Flack and Garland alone, admitting the agreement as alleged, it was without consideration and void.

25      v.8

2nd. That looking to what took place between Garland and the Masons, there was no such agreement between them as could furnish a consideration to support the alleged agreement between Flack and Garland.

3rd. Even admitting that such agreement was supported by a sufficient consideration, there was not such tender of performance on the part of Flack as authorises it to be set up as a bar to the recovery by Garland of the entire indebtedness.

4th. That there was, however, not only no such agreement between Garland and the Masons, but that, even admitting the declarations of Garland in regard to his willingness to compound, the Masons were not influenced by them, but acted on their own judgment in the matter.

5th. That in point of fact Garland made no such declarations as are sworn to by the Masons, and that they are mistaken in their recollection, as appears from the testimony in the record.

6th. That, if for no other reason, Flack is not entitled to the relief prayed by his bill, because he either was guilty of fraud in concealing from the Masons Garland's denial of what they alleged he had stated, or, if he told them and they compounded notwithstanding, their conduct destroyed the consideration, such as was necessary to support the alleged agreement between Flack and Garland to compound.

Le Grand, C. J., delivered the opinion of this court.

The bill in this case prays an injunction (which by the Superior Court of Baltimore city, where the bill was filed, was granted) against a judgment of Baltimore county court recovered against the appellant, Flack, by Nathaniel Garland, of whom the appellee is executrix. The judgment was rendered for a debt due by Flack to Garland and Elwell, of whom Garland was survivor. The bill alleges that Flack failed in business in the year 1842; that after some time had passed, during which he was endeavoring, having the confidence of his creditors, to make most available for their satisfaction the means left to him, he finally proposed to his creditors a composition, by which on paying fifty cents in the dollar he was to be released from his liabilities, determining and declaring

that if such composition should fail to be effected, he would seek release by application for the benefit of the insolvent laws. The bill states that among his creditors, whose good will he thus had, was Garland, who, although during the suspense of the appellant's affairs before the composition was projected, had obtained judgment, yet had taken that step with no adverse purpose, but merely to preserve the highest evidence of his claim. The bill states that after judgment was thus had by Garland, (which was rendered in the year 1843,) he, (Garland,) in the year 1846, and at the period when the composition referred to was in train, acceded to it and agreed, like the rest of the appellant's creditors, to accept the one-half of the amount of his claim in satisfaction of it; to be paid on demand made by Garland, in money, or by the appellant's note at four months. The appellant states that, by Garland so acceding to the composition, all his debts being provided for, he forbore applying for the benefit of the insolvent laws, and again embarked in business;—but that meanwhile Garland died, without receiving or applying for the composition money; and that his executrix, the appellee, unmindful of the adjustment thus binding her testator, was about to issue execution upon the judgment. The bill further states that Garland went forth among the other creditors to solicit and urge them to come into the composition, representing to them that he had acceded to it—stating that fact to persuade them to follow his example.

The proceedings in the cause show that the judgment was obtained at January term 1843; and that on the 5th January 1850 a *scire facias* was issued, on which there was a *fiat*, and then an appeal to this court, where the judgment was affirmed at December term 1852.

The only testimony in the cause which can be regarded as tending, in any degree, to show that Garland had agreed to the composition alleged in the bill, or, that by his persuasion or statements, he induced others to assent to such an arrangement, is that of the Messrs. Masons. This testimony is very far from being decisively conclusive of the question when the other testimony is considered in connexion with it. But, be

this as it may, it is not important to the decision of the case we should pronounce on its efficacy, for, even were it conceded that the composition had been clearly made out, yet the complainant would not be entitled to the relief which he seeks. By its terms the appellant was to pay the sum agreed to be accepted, either in cash or in notes, at four months. It is not pretended he did either, nor that he ever made an effort to do so. He did nothing so far as this record discloses until June 1853, when he filed his bill praying that the execution of the judgment might be enjoined. For several years he did nothing; he neither paid the money, delivered the notes, or offered to pay the money or to deliver the notes. We therefore think, on his own showing, that he has no equity. In the case of *Green & Trammell, vs. Trieber,* 3 *Md. Rep.,* 36, this court said, when speaking of arrangements similar to the one relied upon here, that "the debtor offers his property to his creditors in payment of their claims, or for distribution according to such priorities as he may prescribe. *Payment* being the proposed object of the assignment, it must not contain any provision to defeat or hinder this purpose, beyond such reasonable delay as may be incidental and necessary to the proper execution of the trust." Every composition, in its very nature, contemplates payment in conformity with its terms. In the case now before us, if any was agreed upon, the appellant has wholly failed to perform his part of the contract. If he wished to avail himself of an arrangement for his benefit, he should have performed his part of it, or, at least, offered to do so. His failure to comply is a complete answer to his present complaint.

*Decree affirmed with costs.*