HILL et al., Appellants, v. WERTHEIMER-SWARTS SHOE COMPANY.

150 483
87a 601

Division One, June 14, 1899.

1. **Composition Agreement**: NOT SIGNED BY ALL CREDITORS. A composition agreement by creditors to extend the time of payment of a debtor company, if not signed by all the creditors, is binding on those who do sign, unless it specially stipulates that all or a special number of the creditors shall enter into it to make it binding.

2. ———: AGENT'S AUTHORITY: DAMAGES IN CASE OF BREACH. W. was the agent of defendant with full power to settle or compromise debts due it and to make contracts for the extension of time to its debtors, and especially authorized to make some agreement with other creditors for an extension of time to a particular firm, and in pursuance of this power he drew up a composition agreement extending for one year the time of payment "of the respective claims against the firm, of the undersigned creditors," "further stipulating and agreeing that during the term of said extension, neither one of the contracting parties hereto will purchase the stock of said firm or permit same to be sold.with their aid or assistance, each firm hereto subscribing respectively holding itself liable to all the other subscribing creditors in the sums of their respective claims for breach of conditions of this contract." Plaintiff subscribed the contract, and defendant's name was attached thereto by W., but before the end of the year defendant attached the goods of the debtor firm, and they were sold by the sheriff, and defendant's claim thereby settled, leaving little for the other creditors. *Held*, that said agent had authority to bind the defendant, not only to the extension of time, but also to so much of the agreement as provides the measure of damages in case of the breach.

3. ———: ———: ———: LIQUIDATED DAMAGES. *Held*, that that part of the contract which provides the measure of damages in case of a breach, does not make a case of liquidated damages, since the damages are susceptible of definite ascertainment, which in this case (since the facts show that there were sufficient assets at the time of the attachment to pay all the creditors in full, and these were sacrificed by defendant's forced sale), would be the whole of plaintiffs' claim less what they might have realized by the exercise of ordinary care and diligence after they learned of the attachment.

4. ———: NONSUIT: PLEADING. The trial court nonsuited plaintiffs on the ground that the composition agreement did not debar any of the parties to it from attaching "in the event the debtor firm was about to defraud them all." *Held*, that this ruling was not responsive to the pleadings, since defendant did not plead, in this suit, by way of confession and avoidance, or otherwise, that the debtor firm had been guilty of fraud or that it had violated the provision of the agreement.

5. ———: ———: ATTACHMENT BY CREDITOR: WHEN JUSTIFIABLE. Where creditors of a debtor have entered into a composition agreement extending the time of the payment of their claims against him, there is an implied stipulation on his part that he will not act fraudulently with respect to the property left in his care, and if he fraudulently disposes of it before the extended time for payment has expired, the composition is at an end, and the creditors may at once take steps to protect themselves. But if one of the creditors wrongfully sues out an attachment, he is liable to the others for a violation of their composition contract.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

W. D. WILKERSON, THOS. B. HARVEY and HARRY M. HILL for appellants.

(1) Wash was a general agent of defendant, and as such was clothed with authority to make the contract sued on, for and in behalf of the defendant. McNichols v. Golden, 27 Mo. App. 155; Brooks v. Jameson, 55 Mo. 505; Railroad v. Elgin, 74 Ill. App. 619; 2 Morawitz on Corps, sec. 597; Griggs v. Selden, 58 Vt. 561; Kingsley v. Fitts, 51 Vt. 416; Gibson v. Snow Co., 10 So. 304; Merrimac Pop. Co. v. Trust Co., 129 Ill. 296. (2) By the acts and conduct of defendant and its agent, it is estopped to assert that its representative did not have authority to sign the contract. McNichols v. Nelson, 45 Mo. App. 446; Sparks v. Dispatch Transfer Co., 104 Mo. 531; Cobb v. Day, 106 Mo. 278; Badger Lumber Co. v. Ballentine, 54 Mo. App. 172; Samuel v. Bartu, 53 Mo. App. 587; Fahy v. Springfield Gro. Co. 57 Mo. App. 73; Brooks v.

Jameson, 55 Mo. 505; Johnson v. Harley, 115 Mo. 513; Cross v. Railroad, 71 Mo. App. 585; Mechem on Agency, secs. 83, 84 and 707. (3) The judgment on the attachment issue, in the suit of defendant vs. Harper & Loretz, in the Arkansas court, is no evidence as to the fraud of Harper & Loretz in this cause, the plaintiffs being neither parties nor privies to the parties in the Arkansas suit. Atkinson v. Dixon, 96 Mo. 588; Dugge v. Stumpe, 73 Mo. 513; Norcross v. Hudson, 32 Mo. 227; Strauss v. Ayers, 87 Mo. 348; Black on Judgments, sec. 600. (4) The measure of damages in this cause is the amount of the debt of Harper & Loretz to plaintiffs, under the last clause of the contract; such agreement being a provision for liquidated damages upon the breach of the agreement. Dwinel v. Brown, 54 Mo. 468; Bagley v. Peddie, 69 Am. Dec. 713; Tinkham v. Satori, 44 Mo. App. 659; Morse v. Rathburn, 42 Mo. 594; 1 Sutherland on Damages (2 Ed.), secs. 283 and 475; Spicer v. Hoop, 51 Ind. 365. (5) The contract being one between plaintiff and defendant for an extension of time to a common debtor, for the benefit of the contracting parties, the measure of damages under the first clause of the contract would be the damages naturally resulting from the breach thereof by defendants. Wolcott v. Mount, 36 N. J. 262; 1 Sutherland on Damages, sec. 63; Gallup v. Miller, 25 Hun. 298.

David Goldsmith for respondent.

(1) The suing out and levy of the writ of attachment of the defendant did not constitute a breach of the contract sued upon, even if that contract was binding upon the defendant. This view was taken by the trial court, as shown by the remarks of the judge. The provision of the agreement sued upon is that no party thereto shall purchase the stock of Harper & Loretz or aid or assist in the sale of the same during the term of the extension. All that is pleaded as a violation of this provision and all that is shown by the evidence, is that the

writ of attachment was issued and levied within that time. The plaintiffs are only entitled to a recovery, if the mere issue and levy of a writ of attachment in favor of the defendant in and of itself constituted a purchase by the defendant of the stock of Harper & Loretz, or a sale of that stock with the assistance of the defendant. (2) Wash had no authority to bind the defendant by the contract. (3) The contract in suit never became operative, because it was not signed by all the creditors of Harper & Loretz. (4) The signature of the contract in suit by Wash did not make it operative; something more was necessary. When signed by him it amounted to nothing more than a proposal. Therefore, even if his signature was binding on the defendant, still the defendant was entitled to notice of acceptance by other creditors. (5) The provision in the contract sued upon, that any party guilty of a breach should hold itself liable to the other parties in the sum of their respective claims, is not one for liquidated damages, and there was no proof whatsoever of any actual damages. Therefore, if a recovery by plaintiff were warranted at all, it would only be one for nominal damages, or, in other words, for costs, and an error of so immaterial a character would not be ground for reversal. Cochran v. Railroad, 113 Mo. 359.

MARSHALL, J.—Action for damages for breach of contract of composition between the parties hereto and their debtor.

Harper & Loretz were in business at Des Arc, Arkansas. On the 9th of December, 1892, they were unable to meet their obligations at maturity, and were indebted as follows: Hill, Fontaine & Co. (the plaintiffs), $2,750; Wertheimer-Swarts Shoe Co. (the defendant), $400; Bruce-Beine Hat Company, $60; Goodbar & Co., $467; Porter & McRae, $79.75. On that date all their creditors, except Wertheimer-Swarts Shoe Co. and Bruce-Beine Hat Company, signed an agreement extending the time of payment until January 1st, 1894, and

providing that the debtors were to continue in business, collect outstanding accounts, and apply the proceeds of all sales and collections to the payment of the claims of their creditors pro rata.    On the 4th of January, 1893, the plaintiffs wrote to the defendant stating that Harper & Loretz were unable to meet their obligations, but they felt assured that by giving them time they would pay out in full in a few years, and inclosing the agreement which the other creditors (except Lemon & Gale Dry Goods Co. and Bruce-Beine Hat Co.) had signed; said these parties would sign if the defendant did, and that unless the extension was granted the debtors would be compelled to make an assignment; inclosed a statement of their assets and liabilities, and told them that the court would meet the last Monday in January and all suits over two hundred dollars would have to be brought before that time to cut out suits involving smaller amounts.    On the 5th of January, 1893, the defendant wrote to plaintiffs acknowledging receipt of their letter of the 4th, and said they had referred the matter to their representative, Mr. Wash, and that:    "He will confer with you regarding the matter and whatever he does will be satisfactory to us."    On the 11th of January the plaintiffs wrote to defendant again, but this letter appears to have been lost and so is not in the record.    At any rate the defendant answered it by postal card, on the 12th, saying their letter of the 11th had been received, and that Mr. Wash would be in the city and mail would reach him in their care by the 14th inst.    On the 14th Mr. Wash wrote Harper & Loretz as follows:    "Gentlemen:    I have just now returned home and have consequently been unable to write you before with reference to the settlement of your affairs.    You may write your factors and all other creditors that the Wertheimer-Swarts Shoe Co. stands ready to assist you in any way it can to the same extent that the other creditors do.    If one year's time is sufficient in their judgment to tide over the present difficulties,

please signify our willingness to accept same.    I herewith in-close blank form of agreement for creditors to sign, granting extension, as per promise.    Please get your factors to sign it first and then circulate it among the rest of your creditors." On the same date Mr. Wash wrote to the plaintiffs acknowl-edging receipt of their letter of the 11th, and telling them he had written Harper & Loretz to the effect that defendant was ready and willing to assist them in any way in their power to the same extent that their other creditors did, and adding: "I was recently in Des Arc and had quite a long talk with Mr. Harper, through whom I received a statement of his affairs. I am convinced that he has ample assets were they available. Under the circumstances, however, I think the creditors will do well to give him an extension of one year from January 1st.    I also inclosed him an agreement to be signed by all the creditors granting the extension, which, no doubt, he will for-ward you at once."    On the 17th of January, 1893, Mr. Wash again wrote to plaintiffs as follows:

"I suppose by this time you have received my letter in connection with the Harper & Loretz matter.    As per your instructions of recent date I herewith inclose letter to you." The defendant did not sign the composition contract of De-cember 9th, 1892, but Mr. Wash prepared and on behalf of defendant signed another agreement, which was as follows:

"We, the undersigned, creditors of Harper & Loretz, of Des Arc, Ark., hereby stipulate and agree to grant said Har-per & Loretz an extension of one year from January 1, 1893, for the payment of their respective claims against said firm.

"Further stipulating and agreeing that during the term of said extension, neither one of the contracting parties hereto will purchase the stock of said firm or permit same to be sold with their aid or assistance, each firm hereto subscribing re-spectively holding itself liable to all the other subscribing

creditors in the sums of their respective claims for breach of condition of this contract.

　　"(Signed)　　　　Wertheimer-Swarts Shoe Co.,·
　　　　　　　　　"By Benj. S. Wash, Attorney.
　　　　　　"Hill, Fontaine & Co.
　　　　　　"Bruce-Beine Hat Co.,
　　　　　　　　　"Per B. F. Beine."

The plaintiffs and Bruce-Beine Hat Co. also signed it. The other creditors had already signed the agreement of December 9th, 1892, and were not asked by plaintiffs, and apparently not by any one else, to sign this.　All of the creditors acted upon these agreements and none of them pressed the debtors for their money, but on the 2d of November, 1893, the defendant, without notice to the plaintiffs or any one of the creditors, instituted a suit by attachment against Harper & Loretz, alleging that they had sold, conveyed and disposed of their property with the fraudulent intent to cheat, hinder and delay their creditors, and that they were about fraudulently to dispose of their property with that intent.　They levied on the goods of Harper & Loretz, and they were sold by the sheriff, under the attachment writ, for $536.60.　Defendant afterwards obtained judgment for $440, which, with the costs, was satisfied out of the proceeds of the sale by the sheriff.　The plaintiffs then instituted this suit on the composition agreement signed by the parties hereto and by Bruce-Beine Hat Co. and asked for judgment for $2,744.03, the amount of their claim against Harper & Loretz, with interest thereon, and also "for five hundred dollars damages in addition to the aforesaid indebtedness."

The answer is a general denial.

On the trial the foregoing facts were proved and the following facts were agreed to by stipulation:

"It is hereby stipulated by plaintiff and defendant that the signature of 'Wertheimer-Swarts Shoe Co., by Benj. S.

Wash, attorney,' to the contract sued on in this case is in the handwriting of said Benj. S. Wash; that the said Wash was at the time of signing said contract and for years prior thereto the agent and attorney of defendant's company, whose duty it was to travel for defendant and settle and compromise debts due defendant at his discretion, or bring suit upon the debts owing to defendant company from their customers in Arkansas and Tennessee; that in his discretion he had authority to make contracts for defendant for the extension of time to said debtors with their other creditors, as in his best discretion and judgment it was proper to do; that he went to Des Arc, Ark., especially to make some agreement with Harper & Loretz at that place, who were defendant's debtors at said time, and to make an agreement with their creditors about extension of time for the payment of the debts of said Harper & Loretz; that the plaintiffs addressed a letter to defendant dated January 4, 1893, which was received by defendant through the mail on the 5th of January, 1893, and that said letter will be produced by defendant at the present trial; that the defendant company answered said letter, by letter dated January 5, 1893, and that said answer was forwarded through the mail to the plaintiffs on January 5, 1893, and was received by plaintiffs; said answer is herewith filed and made a part of this stipulation and marked Exhibit 1; that plaintiffs replied to said answer by letter dated January 11, 1893, which was forwarded through the mail and received by the defendant on January 12, 1893, but said last mentioned letter from the plaintiffs can not now be found by defendant; that defendant company on January 12, 1893, answered said last mentioned letter by postal of that date and forwarded same by mail to plaintiffs, which they received and said postal is herewith filed and is made a part of this stipulation and marked Exhibit 2.

"It is further agreed that plaintiffs had no knowledge of any limitations, if any existed, upon the authority of said

Wash to make the contract set out in the plaintiffs' petition February 19, 1896.

"(Signed)  Harvey & Hill,
"W. D. Wilkerson,
"Attorneys for Plaintiffs.
"David Goldsmith,
"Attorney for Defendant."

Upon this showing the court, as it appears from the colloquy between the court and counsel, held that Wash was the defendant's agent with full power to enter into a composition agreement on their behalf, but that he had no power to bind the defendant to the affirmative part of the second clause of the contract, respecting damages for a breach thereof; that this clause was severable from the remainder of the contract, but that the contract did not prevent or debar any of the parties to it from instituting a suit by attachment or otherwise, against their debtor "in the event the debtors themselves were about to defraud them all;" hence the court instructed the jury that the plaintiffs were not entitled to recover, and they thereupon took a nonsuit, and after proper steps appealed the case to this court.

I.

It is urged by defendant that the composition agreement is not binding upon it because it was not signed by all the creditors of Harper & Loretz. This is untenable. Unless it is expressly stipulated in a composition that all or a specified number of the creditors shall enter into it to make it binding, it is not essential that a majority or any particular number, more than two, must sign it, to make it binding on all who do sign it. [Good v. Cheesman, 2 B. & Ad. 320; Constantein v. Blache, 1 Cox Ch. 287; Lewis v. Jones, 4 B. & C. 566; Norman v. Thompson, 4 Exch. 755; Devon v. Ham, 17 Ind. 472; Lambeit v. Shetler, 71 Ia. 465; Gardner v. Lewis, 7 Gill

(Md.), 377; Eaton v. Lincoln, 13 Mass. 424; Renard & Co., v. Fuller, 4 Bosw. 107; Bank v. McGeoch, 92 Wis. 311.]

This composition did not expressly require that it should be agreed to by any particular number of the creditors. On the contrary in his letter to plaintiffs of the 14th of January, Mr. Wash said: "I also enclosed him" (Harper & Loretz) "an agreement to be signed by all the creditors granting the extension," thereby clearly limiting it to such only as might grant the extension. As soon as it was signed by the plaintiffs and defendant it became a valid composition as to them whether any other creditor signed it or not. [Bank v. McGeoch, 92 Wis. 311.]

## II.

Defendant next argues that Wash had no power to bind it to so much of the contract as provides the measure of damages in case of a breach.

The stipulated facts show that Wash was the agent of the defendant, clothed with full power to settle and compromise debts due defendant, at his discretion, and with like power and discretion to make contracts for defendant for the extension of time to its debtors, and especially authorized to make some agreement with the other creditors for an extension to Harper & Loretz, and defendant's letter to plaintiffs expressly stated that the whole matter had been referred to Wash, as their representative, and "whatever he does will be satisfactory to us." Accordingly Wash refused to sign the composition of December 9th, which had been signed by all the other creditors except defendant and Lamon & Gale Dry Goods Co. and Bruce-Beine Hat Co. (and these two had agreed to sign if defendant did so), which granted the same extension of time, and provided that the proceeds of sales and collections should be paid to the creditors pro rata on the first of each month, and instead thereof prepared, signed and transmitted the composition sued on, which was the same

Hill v. Shoe Co.

as to the time granted, but instead of a pro rata division of re-
ceipts from sales and collections on the first of each month
provided that none of the contracting parties, during the term
of the extension, should, "purchase the stock of said firm or
permit the same to be sold with their aid or assistance," and to
make this provision effective the composition he prepared, fur-
ther provided:    "Each firm hereto subscribing respectively
holding itself liable to all other subscribing creditors in the
sums of their respective claims for breach of condition of this
contract."

Wash is thus shown not only to have been defend-
ant's general agent to act for it in matters of this
character, not only to have had apparent authority to
enter into contracts of this character but also to have
been clothed by defendant with express authority to
bind it in this particular matter, it assuring plaintiffs
beforehand that "whatever he does will be satisfactory to us."
More complete authority could not have been conferred upon
him.    The plaintiffs dealt with him as the *alter ego* of the
defendant, and his acts relating to the subject-matter under
negotiation were the acts of the defendant.    He had some par-
ticular object in mind, which he must have believed would be
beneficial to defendant when he refused to agree to a pro rata
monthly division of the proceeds of sales and collections, and
instead insisted on a provision against any of the parties to the
composition buying or aiding or assisting in the sale of the
debtor's stock of goods.    The only reasonable interpretation
to put on his conduct in this regard is, that he knew that if
Harper & Loretz were required to divide the proceeds of all
sales and collections, pro rata, among all their creditors, on the
first of each month, it would be a gradual liquidation by
Harper & Loretz, but it would give them no money with
which to replenish the stock as it was sold out, and they would
thus be deprived of turning over their capital as often as they
could and making a profit on each sale, repurchase and sale,

and that when the stock on hand was all converted into cash and the outstanding debts were collected, and the whole turned over to the creditors, Harper & Loretz would no longer be a "going concern," but would be eliminated as merchants and as possible future patrons of the defendants, whereas by allowing them to go on in business for a year, with full control over their assets, and without diminishing the earning capacity and profit-making capability of their capital, they might and possibly would be able at the end of the year to pay them what they owed, and still have a "going" business and mayhap a surplus on hand.

But whatever was the true reason, and whether the contract proposed by defendant and accepted by the plaintiffs was a wise one or not (and who shall say it was not wise?), it was done, and Wash had authority to bind defendant to it. [Mechem on Agency, sec. 708, p. 535; Story on Agency (9 Ed.), sec. 443; Banks v. Everest, 35 Kan. 687; Cobb v. Day, 106 Mo. l. c. 298; Rice v. Groffmann, 56 Mo. 434; Mc-Nichols v. Nelson, 45 Mo. App. l. c. 45; Badger Lumber Co. v. Ballentine Foster Co., 54 Mo. App. l. c. 180.]

### III.

Plaintiffs contend that the contract is one for stipulated or agreed or liquidated damages, that is, that if either party broke the contract he would pay the others the amount of their claims respectively; or, if they are in error in this, and if the contract is only one for a penalty, still they were entitled to nominal damages, and the circuit court erred in ordering a nonsuit.

We have at this term, in the case of May v. Crawford, *post* 504, had occasion to investigate and decide the principles which must obtain in determining whether a contract is to be held one for a penalty or for liquidated damages, and it is not necessary to review the law in this case. But as this case must be

tried anew it is proper to say now, that we do not regard it as a case of liquidated damages, for the especial reason that the damages can be computed with certainty by definite rules, are measurable by an exact pecuniary standard, and are susceptible of definite ascertainment. Or in other words the plaintiffs' damage is the amount they lost by defendant's breach of the contract, which, under the facts as they now appear, that the debtors had assets enough to pay all their creditors in full at the time the attachment was levied, and that these assets were diminished or sacrificed by a forced sale so that they did not yield enough to pay all in full, would be the whole of plaintiffs' claim, less what they might have realized from the debtors by the exercise of ordinary care and diligence, after they learned of the attachment by the defendant. The case, however, did not turn on this question in the trial court. There was some discussion between court and counsel on this proposition, and plaintiffs' counsel seem to have "straddled," as they did in their petition, and refused to take a definite stand as between a penalty and liquidated damages; in fact, going so far as to claim a right to recover on both theories. The court put its decision upon a different ground entirely.

## IV.

The circuit court nonsuited plaintiffs on the ground that the composition did not debar any of the parties to it from attaching or otherwise proceeding, "in the event the debtors themselves were about to defraud them all."

This ruling was not responsive to any issue joined in the case, nor was there any competent evidence before the court upon which to base the instruction. The plaintiffs were not parties to the attachment suit by defendant against Harper & Loretz, and hence are not bound by it in any manner. The record in that case, offered in evidence by plaintiffs, was admissible to prove the breach of the composition contract

pleaded in the petition, and denied, in the general denial, by defendants. But there was no special defense of this character pleaded by the defendant, by way of confession and avoidance. Hence this case was determined upon a point not in issue and as to which there has been no trial or finding of fact between the parties to this action. Indeed counsel for defendant does not here attempt to sustain the judgment of the trial court on this ground. He does not argue the question or cite any decision in support of the ruling. Still as the case must be tried anew it is proper to refer to the proposition now. The cases of O'Brien v. Osborne, 10 Hare 92, Cutter & Co. v. Reynolds, 8 B. Mon. 596, and Flack v. Garland, 8 Md. 188, decide that the composition agreement can not be relied on by the debtor to defeat an action by one of the creditors, who was a party to the composition, unless the debtor himself has complied with the spirit of the composition, and that he will not be protected by the composition agreement in cases where he has done any act not contemplated by that contract that he should do and which is injurious to the creditors; and the case of Bank of Montgomery v. Ohio Buggy Co., 110 Ala. 360, holds that where the debtor has violated the terms of the composition agreement, and has paid one of the creditors, who was a party to that agreement, his claim in full, the other creditors, parties to that agreement, can not treat the money so paid to such creditor as a trust fund in his hands for the benefit of all the creditors who agreed to the composition. In the Alabama case the Supreme Court treated the composition agreement as abrogated the instant the debtor violated its provisions, and held that each creditor was entitled to look out for his own interests as soon as the debtor violated the agreement. The composition in that case, as in the case at bar, was for an extension of time for payment by the debtor, coupled with a condition that no new indebtedness was to be incurred and a provision that if any new indebtedness was incurred, the extension of time granted by the composition was to become

null and the claims so extended were to become due and collectible at once.

A contract of composition, depending upon the mutual forbearance of the creditors for a consideration to support it, must be carried out in the strictest good faith by all the parties to it, and every such contract must be strictly construed. [6 Am. and Eng. Ency. Law (2 Ed.), p. 386, and cases cited in note 3.] Such agreements must be construed in the light of the financial condition of the debtor at the time they are entered into. There is always present in such a contract an implied agreement by the debtor that he will, in good faith, carry out the agreement, and that the status and rights of all parties shall not be changed to their detriment by any fraudulent or wrongful act of his. He could not therefore set up the composition agreement as a shield against his own fraud. The agreement of the creditors *inter sese,* is that they will extend the time of payment to a particular date, but there is always the implied stipulation that the debtor shall not act fraudulently with respect to the property and assets left in his care and management. This being the nature and extent of the agreement, if the debtor fraudulently disposes of his property before the extended time for payment has expired, there is no rule of law or morals and no precedent that prevents any of the creditors from immediately taking steps to protect himself. The composition agreement is broken, and the parties are then in the same attitude towards the debtor and each other as if no agreement had been made. Any other rule would make it possible for the debtor to effectually dispose of his property at his leisure, while the hands of his creditors were tied by a contract which he himself has broken. The agreement in this case does not contemplate the creation of such conditions or the imposition of such restrictions upon the creditors. Of course if it should appear, under proper issues tendered and joined, that the debtor had been guilty of

no fraud, but that the defendant had wrongfully sued out the attachment, the defendant would clearly be liable in this action, for such conduct would be a palpable violation of the spirit of the composition. But as before pointed out, no such issue has been joined or tried in this case, and it was error for the circuit court to nonsuit the plaintiffs for this reason.

The judgment of the circuit court will be reversed, and the cause remanded to that court for a new trial in conformity to this opinion.

It is so ordered. All concur.